# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MARIJA STONE,**

      **Plaintiff,**

**v.**                            **Case No.  8:05-cv-636-T-30TBM**

**GEICO GENERAL INSURANCE
COMPANY,**

      **Defendant.**

_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. #28-1 through 28-44), and Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment (Dkt. #35-1 through 35-20).  The Court, having considered the motion, response, memoranda, affidavits, exhibits, depositions, and being otherwise advised in the premises, finds that Defendant's motion should be granted in part and denied in part as stated herein.

## I.     Background.

Plaintiff, Marija Stone ("Stone" or "Plaintiff"), brings a four count complaint against Defendant, Geico General Insurance Company ("Geico" or "Defendant") seeking relief from retaliation based on her opposition to Geico's alleged acts of discrimination in violation of the following statutory law: Count I - Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*; Count II - Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.*;

Count III - Florida Civil Rights Act of 1992, Chapter 670, Florida Statutes; and Count IV - Florida's Whistleblower's Act, §448.102, Florida Statutes.

Stone began employment with Geico on or about January 12, 1998, as a Claims Service Representative.   In May of 2003, Stone attained the position of PIP/TCR-1 supervisor.  As a PIP/TCR-1 supervisor, Stone's direct manager was Kathy Watkins.  Stone supervised several subordinates, including Marie Walters, an employee over the age of forty.

**A.      Facts Relating to Allegations of Retaliation in Response to Plaintiff's Claim of Sexual Harassment.**

Plaintiff maintains that on June 15, 2004, a sexual comment was made to her and another female employee by Geico Claims Director Ryan West.  While Ryan West denies that an inappropriate comment was made, Plaintiff's claim is somewhat supported by Geico co-employee, Debbie Showers.   Plaintiff claims that she was at her desk with an associate [Showers] reviewing a claim.  Ms. Showers was talking with her hands.  Ryan West walked over and said, "Talking with your hands over there, huh?"  Plaintiff responded, "Yes, want to join?"  Ryan West then said, "No, thank you.  There will be a whole different type of hand job."  Ryan West laughed and then walked away.

On June 21, 2004, Plaintiff complained about this incident to Geico Human Resources Manager Diana Napoles.  This is the only incident of sexual harassment Plaintiff has reported or claimed against Geico in this matter.  Ms. Showers did not make a complaint.

**B.     Facts Relating to Allegations of Retaliation in Response to Plaintiff's Opposition to Racial Discrimination.**

On February 26, 2004, Geico CREDIT UNION Supervisor Michael White required Geico CREDIT UNION Examiner Neville Stone, Plaintiff's husband, to sign and affirm a memo that Mr. Stone would not miss future deadlines.  Mr. Stone felt that being forced by his supervisor to affirm that Mr. Stone would not miss future deadlines was unfair and discriminatory treatment, because other employees who had also missed deadlines were not required to sign a similar memo.

In March or April of 2004, Plaintiff approached Geico CREDIT UNION Manager Shawn Burklin to complain about the way Michael White was treating her husband.  Plaintiff provided a copy of a memo that Michael White made her husband sign and a copy of a memo that another employee holding the same position received that did not require the examiner to "sign and affirm" that future deadlines would not be missed.  The second memo was identical to the memo given to her husband except for the requirement that the examiner affirm the memo.  Plaintiff asked Shawn Burklin to transfer her husband to a different manager.

On May 7, 2004, the law offices of Dennis Hernandez & Associates, P.A. sent a demand letter to Geico threatening suit for racial discrimination on behalf of Plaintiff's husband, Neville Stone, an African-American male.  Within a few weeks of the receipt of the demand letter, Geico transferred Neville Stone to work under a different manager, Douglas Shiring.

Neville Stone resigned from his position at Geico on or about July 28, 2004.  Mr. Stone did not file a formal complaint with the EEOC or a lawsuit relating to his racial discrimination claims against Geico.

### C.     Facts Relating to Allegations of Retaliation in Response to Plaintiff's Opposition to Age Discrimination.

In May of 2003, Plaintiff was Marie Walters' immediate supervisor.  Kathy Watkins, Plaintiff's supervisor, specifically asked Plaintiff to keep an eye on Marie Walters' and issue a warning to Walters for poor performance issues.  Plaintiff told Kathy Watkins that she wanted more time to observe Walters before issuing formal warnings or reprimands.

In December of 2003, Plaintiff complained to Defendant's Human Resources office that Kathy Watkins, Plaintiff's supervisor, was continually pressuring her to discipline and scrutinize Ms. Walters when her performance did not warrant such action.  Plaintiff told Human Resource Manager Diana Diaz that Plaintiff believed Ms. Walters was being discriminated against because of her age.  Diaz told Plaintiff that she would look into the matter.  Even after the December 2003 meeting, Ms. Watkins continued to insist that Plaintiff "write-up" Ms. Walters because she was "too slow."  Plaintiff warned Ms. Watkins that her treatment of Ms. Walters could be regarded as age discrimination.

In January of 2004, Ms. Walters made a complaint through Defendant's internal complaint procedure, alleging that Ms. Watkins was harassing and discriminating against her because of her age.  During the investigation of the complaint, Defendant's Vice President in charge of the Lakeland Facility, George Rogers, interviewed Plaintiff.  Plaintiff informed

Mr. Rogers that Ms. Walters' performance did not warrant disciplinary action and was comparable to that of other employees who had not been written up.  Defendant resolved the complaint by determining that Ms. Walters should not be disciplined, and would be permitted to transfer to a unit outside Ms. Watkins' supervision.  Ms. Walters' pay was not reduced, however her position was considered a "lower level position".

Ms. Walters accepted the transfer, but asserted that a reduction in her position level was not warranted.  Ms. Walters retained the law offices of Dennis Hernandez & Associates, P.A. to send a demand letter to Geico dated July 19, 2004, claiming that Geico had discriminated against Ms. Walters because of her age (the "July 19th letter").  The July 19th letter states, in pertinent part:

> It is clear that Ms. Watkins was on a path to develop a pretextual reason for terminating Ms. Walters.  This is evidenced by the fact that Ms. Watkins, despite Ms. Walters' outstanding performance, continually imposed upon Ms. Walters' supervisor [Stone] to issue performance warnings to Ms. Walters for no reason other than illegally laying the groundwork for severing Ms. Walters from employment at Geico.  Ms. Walters' supervisor [Stone] objected, knowing discipline was baseless, discriminatory, and unlawful.

Subsequent to the receipt of the July 19th letter, Geico's home office immediately initiated an investigation of the matter, including the interview of Tess Guidry.  On August 4, 2004, Defendant's Director of Claims, Rhett Rayburn, and Human Resource Officer, Diana Napolis, informed Plaintiff that serious allegations had been made against her and that she was being placed on administrative leave.

On August 12, 2004, while on administrative leave, Plaintiff was summoned to Defendant's facility to meet with Mr. Rayburn and Ms. Napolis.  On August 13, 2004, Geico

responded to the July 19th letter from Ms. Walters' lawyer stating that Geico's investigation indicated that Ms. Walters had not received any discriminatory treatment in her employment due to her age.  On August 14, 2004, Plaintiff was terminated.

While the record is unclear as to the date of filing, Ms. Walters eventually filed a charge of age discrimination against Geico with the EEOC.[1]

### D.      Facts Relating to Plaintiff's Discharge.

In May of 2004, Plaintiff accessed associate personnel files and information ("PA Information") of adjusters in the continuing unit.  Plaintiff was not a manager or supervisor of the continuing unit.  Plaintiff's husband worked as an examiner in the continuing unit.  PA Information is considered "protected information" by Geico.  PA Information is used by Geico management to provide associates with coaching feedback during monthly performance review sessions and is used as a means to rank associates within particular sections for purposes of salary increases.  Pursuant to Geico policy, PA Information was restricted to managers and supervisors of individual sections or departments.

Upon accessing such PA Information, Plaintiff realized that such information should not be available to all Geico employees on a "public file."  Plaintiff notified David Seavey, a Continuing Unit Claims Manager, that the PA Information for CREDIT UNION examiners was accessible to all Geico employees on a public file.  On the same day, David Seavey notified his immediate supervisor, Mark Sugden, that the PA Information was accessible to

---

[1] See Dkt. #35-5, Deposition of Geraldine Lanier, Pages 87-88.

all employees on a public file.  Mark Sugden then called computer tech personnel to fix the glitch in the system.

A few weeks later, Plaintiff again accessed the PA Information on the public file.  She once again notified David Seavey that the PA Information was still accessible on the public file.  In order to confirm the accessibility of the PA Information, David Seavey requested several of his examiners to try to access the same information on their computers.  They also were able to access the information that was supposed to be protected information and available only to specific managers and supervisors.  Once again David Seavey notified Mark Sugden that the information remained unprotected.  Within a few weeks, the technology department set up a new profile for the PA Information and the glitch in the system was fixed.

In May of 2004, neither Mr. Seavey nor Mr. Sugden told Plaintiff not to try to access the information again or to report the problem to her immediate supervisor.  Further, Plaintiff did not receive an informal or formal reprimand or comment by any Geico supervisor or manager relating to her access of the PA Information in May of 2004.

Also on May 20, 2004, Plaintiff accessed the loss file of an associate named Leslie Malone.  Associate loss files are personal insurance claims filed by Geico associates that maintain their personal auto insurance through Geico.  Geico policy dictates that associate loss files are accessible by only the adjuster specifically assigned to handle associate loss files and their direct supervisors and managers.  It is a violation of Geico policy to show an

associate loss file to any Geico employee who is not directly involved with the file's handling.

On May 28, 2004, Tess Guidry, a TCR-1 Supervisor, voluntarily approached Human Resource Manager Diana Napoles and reported that Marija Stone had accessed Leslie Malone's associate loss file as well as PA Information of employees that were not in Stone's unit.  Ms. Guidry told Ms. Napoles that Stone was "trying to find something against Geico."[2]  Ms. Guidry also told Ms. Napoles that "Marija has a pending lawsuit against the company" and that it was related to her husband and CREDIT UNION Manager, Michael White.[3]  Ms. Napoles asked Ms. Guidry to sign a written statement supporting such allegations, but Ms. Guidry declined because she claimed to be uncomfortable with the entire situation and did not want to get too involved.

Ms. Napoles did not investigate the allegations made by Ms. Guidry or ask Stone for an explanation during the months of June or July of 2004.  Ms. Napoles admits that she did not give Plaintiff a warning or take any disciplinary action, because "[i]t wasn't needed at that time."[4]

 During the last week of July or the first week of August, Geico's Lakeland office received a copy of the July 19th letter sent by Marie Walters' lawyer claiming that Geico had discriminated against Ms. Walters because of her age.

---

[2] See Dkt. #28-39, Deposition of Tess Gudiry, Page 25, Lines 21-24.

[3] See Dkt. #28-39, Deposition of Tess Guidry, Page 29, Lines 6-8.

[4] See Dkt. #28-16, Deposition of Diana Napoles, Page 46, Lines 8-11.

On August 4, 2004, as part of an internal investigation relating to the age discrimination claims made in Marie Walters' age discrimination demand letter, Ms. Napoles and Byron Howard asked Ms. Guidry to meet them in Ms. Napoles office. Ms. Napoles inquired into Ms. Guidry's allegations from their May 28, 2004 meeting and asked what the atmosphere in the department was like currently. At the August 4th meeting, Ms. Guidry told Ms. Napoles and Mr. Howard that she was aware that Marie Walters had filed an age discrimination complaint against Geico and that Ms. Walters was using the same attorney as Neville Stone. Ms. Guidry also told them that Marija Stone (Plaintiff here) was soliciting other Geico employees to file complaints against Geico.

On August 4, 2004, Ms. Napoles asked Ms. Guidry again whether she would be willing to give a written statement regarding her allegations against Stone made in May of 2004. Ms. Guidry claimed to be afraid of Stone, because she thought Stone might have ties to the mob in New York. Ms. Napoles continued to press Ms. Guidry for a written statement, and Ms. Guidry said she would think about it. Later that day, Ms. Guidry returned and provided a written statement to Ms. Napoles regarding Stone's May 2004 actions as well as Stone's more recent activities and comments.

On the same day, Ms. Napoles called Stone to her office and told Stone that she was being placed on administrative leave, must hand over her employee badge, and leave the building immediately. Subsequent to placing Stone on administrative leave, Ms. Napoles contacted Geico's special investigations unit to run a background check on Stone to see if she had a criminal background. The background check revealed that Stone had once been

charged with a misdemeanor for shoplifting in 1997.  The charge was dismissed in July of 1998.  Stone had no other criminal history.  Ms. Napoles then pulled Stone's 1998 insurance license application to see if Stone had disclosed that she had been charged with a misdemeanor.  Stone did not disclose such information in her insurance license application.

On August 12, 2004, Diana Napoles and Rhett Rayburn met with Stone and confronted her with Ms. Guidry's allegations as well as Stone's failure to disclose her prior criminal history.   After the August 12th meeting, Ms. Napoles and Mr. Rayburn recommended that Stone be terminated.  Geico managers, Burklin, Rogers, Lanier and Burgess, agreed with Ms. Napoles recommendation.

On August 16, 2004, Ms. Napoles and Mr. Rayburn called Stone and informed her over the telephone that based on her violation of confidentiality provisions of Geico's code of conduct she was terminated.  Ms. Napoles admits that Stone's prior failure to report her criminal history on her insurance license application was not given to her as a reason for her termination.

**Summary Judgment Standard**

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995).  At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth

of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, the court views all evidence in the light most favorable to the party opposing the motion. Harris v. H & W Contracting Co., 102 F.3d 516, 519 (11th Cir. 1996). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. See Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993).

## II.   Counts I and III - Retaliation in Violation of Title VII and the FCRA.

Plaintiff claims that Defendant retaliated against her because of her protected activity in opposition to sexual harassment, and the protected activity of her husband in opposition to racial discrimination against her husband, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a) and the Florida Civil Rights Act (FCRA), Chapter 760, Florida Statutes. Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation under Title VII or the FCRA.

Title 42 U.S.C. §2000e-3(a) states:

(a)   **Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.**
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In order to establish a claim for retaliatory discharge in violation of Title VII or the FCRA, a plaintiff must show: 1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action: and 3) that there is some causal connection between the two events. <u>Meeks v. Computer Associates International</u>, 15 F.3d 1013, 1021 (11th Cir. 1994); <u>Harper v. Blockbuster Entertainment Corp.</u>, 139 F.3d 1385, 1387 (11th Cir. 1998).[5] Although not specifically enumerated as an element, a plaintiff must also show that the defendant was aware of the protected expression at the time it took the adverse employment action. <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163 (11th Cir. 1993).

If a court finds that the plaintiff has established a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. <u>Meeks</u>, 15 F.3d at 1021. Once the defendant meets its burden of production, the plaintiff must then demonstrate that the defendant's proffered explanation was a pretext for retaliation. <u>Id.</u>

**A.      Opposition to Sexual Harassment.**

Plaintiff claims that Defendant retaliated against her in violation of Title VII and the FCRA in response to her protected activity in opposition to sexual harassment. Defendant

---

[5] Section 760.10(7), Florida Statutes, is virtually identical to its federal Title VII counterpart, 42 U.S.C. §2000e-3(a). The FCRA is patterned after Title VII; thus, federal case law on Title VII applies to FCRA claims. <u>Castleberry v. Chadbourne, Inc.</u>, 810 So.2d 1028, 1030 (Fla. 1st DCA 2002).

argues that Plaintiff cannot establish a *prima facie* case of retaliation under Title VII or the FCRA, because her belief that she was sexually harassed was not objectively reasonable.

In order to demonstrate that Plaintiff's complaint of sexual harassment constituted "statutorily protected expression," Plaintiff must prove: (1) a subjective, good-faith belief that Geico engaged in an unlawful employment practice, and (2) that her belief was objectively reasonable. Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). For an employer's conduct to constitute actionable sexual harassment, it must be "so objectively offensive as to alter the 'conditions' of the victim's employment." Tatt v. Atlanta Gas Light Company, 138 Fed. Appx. 145, 148 (11th Cir. 2005), citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998). Plaintiff must establish not only that he or she subjectively perceived the environment as hostile and abusive, but also, that a reasonable person would perceive the environment as hostile and abusive, considering the totality of the circumstances. Gupta v. Fla. Bd. Of Regents, 212 F.3d 571, 583 (11th Cir. 2000). Plaintiff must also show "that the harassment occurred because of her sex" and "that the conduct in question [was] severe or pervasive enough that a reasonable person would find it hostile or abusive." Tatt at 148, citing Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999).

To determine whether the conduct is sufficiently severe or pervasive, the court should consider: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."

Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999); see also Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993).  Although the alleged conduct need not actually be sexual harassment to support a retaliation claim, the conduct "must be close enough to support an objectively reasonable belief that it is."   Clover, 176 F.3d 1346, 1351.

1.     **Plaintiff has failed to establish that the complained of conduct was frequent, severe, pervasive, or interfered with her job performance.**

Plaintiff has offered only one comment by Geico Claims Director Ryan West in support of her sexual harassment claim.  While the comment was inappropriate, Plaintiff admits that Mr. West did not make any other inappropriate comments to her or in her presence.  Mr. West did not attempt to touch Plaintiff or threaten her in any way.  Further, Plaintiff has offered no evidence that Mr. West's comment interfered with her job performance.[6]  Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to establish that the complained of conduct was sufficiently frequent, severe or pervasive to alter the terms or conditions of her job performance.  At best, Mr. West's comment was a "mere offensive utterance."  Accordingly, the Court finds that Plaintiff has failed to establish that a reasonable person would perceive her work environment as hostile and abusive, considering the totality of the circumstances.

---

[6] The Court notes that Plaintiff has attempted to bolster her sexual harassment claim with examples of non-sexual, verbally abusive conduct by her female supervisor Kathy Watkins.  Such conduct was not based on Plaintiff's sex, and therefore, does not constitute conduct establishing a sexual harassment hostile work environment claim.

**2.     Plaintiff has failed to establish a *prima facie* case of retaliation under Title VII and the FCRA in relation to sexual harassment.**

Since Plaintiff has failed to establish that a reasonable person would perceive her work environment as hostile and abusive, Plaintiff's claim of sexual harassment does not constitute "statutorily protected expression." Since Plaintiff is unable to show that her sexual harassment claim constitutes a statutorily protected expression, Plaintiff has failed to establish a *prima facie* case of retaliation under Title VII and the FCRA. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's claims that Defendant retaliated against her in violation of Title VII and the FCRA based on her opposition to sexual harassment.

**B.     Opposition to Racial Discrimination Against Plaintiff's Husband.**

Plaintiff claims that Defendant retaliated against her in violation of Title VII and the FCRA based on her opposition to racial discrimination by Defendant against her husband, Neville Stone. Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation under Title VII or the FCRA, because Plaintiff cannot establish a causal link between her protected activity and her termination.

As discussed in detail above, to establish a claim for retaliatory discharge, a plaintiff must show: 1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action: and 3) that there is some causal connection between the two events. Meeks, 15 F.3d 1013, 1021.

### 1.    Plaintiff has established that she suffered an adverse employment action and that she engaged in statutorily protected activity.

It is undisputed that Plaintiff has met two of the three necessary prongs. First, Plaintiff suffered an adverse employment action when she was terminated on August 16, 2004. Second, Plaintiff engaged in statutorily protected expression in opposition to race discrimination against her husband. The record reflects that in early 2004, Plaintiff met with Geico CREDIT UNION Manager Shawn Burklin and told him that Geico was allowing Mike White to destroy her husband's reputation and career; and in March or April of 2004, Plaintiff approached Shawn Burklin to again complain about the way Michael White was treating her husband. Plaintiff provided a copy of a memo that Michael White made her husband sign on February 26, 2004, and a copy of a memo that another employee holding the same position received that did not require the examiner to "sign and affirm" that future deadlines would not be missed. Plaintiff told Mr. Burklin that it was unfair for Geico to treat her husband differently or more severely for being late on company deadlines when many other employees were consistently late on company deadlines also.[7] Plaintiff asked Shawn Burklin to transfer her husband to a different manager.

---

[7] The Court notes that the record is unclear whether Plaintiff actually told Shawn Burklin in March or April of 2004 that she thought her husband was being discriminated against because of his race, rather it appears that she was complaining because she thought her husband was being treated "unfairly." For purposes of the Court's consideration of Defendant's Motion for Summary Judgment, the Court will view all evidence in the light most favorable to the Plaintiff. Thus, for purposes of this order only, the Court will assume that Plaintiff told Shawn Burklin that she felt her husband was being treated unfairly because of his race.

On May 7, 2004, the law offices of Dennis Hernandez & Associates, P.A. sent a demand letter to Geico threatening suit for racial discrimination on behalf of Plaintiff's husband, Neville Stone, an African-American male. Within a few weeks of the receipt of the demand letter, Geico transferred Neville Stone to another position under a different manager. Nevertheless, Neville Stone resigned from his position at Geico on or about July 28, 2004. Mr. Stone did not file a formal complaint with the EEOC or a lawsuit relating to his racial discrimination claims against Geico.

The May 7th demand letter and the resignation of Neville Stone do not constitute "statutorily protected activity" on the part of Plaintiff. Plaintiff did not write the May 7th demand letter, nor has a copy of such letter been submitted into the record. Further, Neville Stone's resignation on July 28, 2004, in no way establishes a statutorily protected activity on the part of Plaintiff. Thus, Plaintiff's meetings with Shawn Burklin in early 2004 and in either March or April of 2004, appear to be the only express opposition activities that Plaintiff made on behalf of her husband of which Geico would have had knowledge.

**2.      Plaintiff has failed to establish that there is a causal link between her protected activity in March or April of 2004 and her termination in August of 2004.**

To prove a causal link, a plaintiff must demonstrate that the protected activity and the adverse action were not "wholly unrelated." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999). A plaintiff may establish the causal link by showing a close temporal proximity between the decision maker's knowledge of the protected activity and

the adverse employment action.  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

The temporal proximity must be "very close."  Id.  The Eleventh Circuit has held that a

period of one month between the protected activity and the adverse employment action

qualifies as "close temporal proximity,"  Id.  A three-month lapse does not.  Id.

Upon a review of the record, the Court concludes that there was an approximate four

month gap between Plaintiff's statutorily protected expression and Plaintiff's termination.

Plaintiff has offered no other evidence which would bolster her argument that her termination

by Geico was made in retaliation against her because of her opposition to race discrimination

against her husband.  Further, shortly after receiving the May 7th demand letter, Geico

transferred Neville Stone to another department pursuant to Plaintiff's and Neville Stone's

request.  Accordingly, the Court concludes that Plaintiff's termination on August 16, 2004,

and Plaintiff's opposition to her husband's treatment by Michael White in March or April of

2004 are wholly unrelated.  Since Plaintiff has failed to establish that there is a causal

connection between the two events, Plaintiff has failed to establish a *prima facie* case of

retaliation under Title VII and the FCRA.  Accordingly, Defendant's Motion for Summary

Judgment is granted as to Plaintiff's claims that Defendant retaliated against her in violation

of Title VII and the FCRA based on her opposition to racial discrimination against her

husband.

## III.    Counts II and IV - Retaliation in Violation of the ADEA and the FWA.

Plaintiff claims that Defendant retaliated against her because of her protected activity

in opposition to age discrimination against a co-employee, in violation of the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. §623(d), and the Florida's

Whistleblower's Act (FWA), Section 448.102(3), Florida Statutes.  Defendant argues that

Plaintiff cannot establish a *prima facie* case of retaliation under the ADEA or the FWA.

The ADEA prohibits not only discrimination on the basis of age but also

discrimination based on an individual's opposition to age discrimination or an individual's

charge, testimony, assistance, or participation in an investigation, proceeding, or litigation

based on age discrimination.  See Title 29 U.S.C. §623.  Specifically, 29 U.S.C. §623(d)

states:

> **(d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation**
> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

The FWA prohibits retaliatory action against an employee because the employee has

objected to, or refused to participate in, any activity, policy, or practice of the employer

which is in violation of a law, rule, or regulation.  See Fla. Stat. §448.102(3).

Under Florida law, ADEA and FWA claims are analyzed using the same framework

used for Title VII retaliation claims.  See Bell v. Georgia-Pacific Corporation, 390 F.Supp.2d

1182, 1187 (M.D. Fla. 2005); see also Pipkins v. City of Temple Terrace, Fla., 267 F.3d

1197, 1201 (11th Cir. 2001); Olmsted, 141 F.3d 1457, 1460.  Under this framework, to

establish a *prima facie* case of retaliation in the absence of direct evidence of retaliatory intent, a plaintiff must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.  See id.

If a court finds that the plaintiff has established a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action.  Meeks, 15 F.3d at 1021.  Once the defendant meets its burden of production, the plaintiff must then demonstrate that the defendant's proffered explanation was a pretext for retaliation.  Id.

## A.   Opposition to Age Discrimination Against Marie Walters.

Plaintiff claims that Defendant retaliated against her in violation of the ADEA and the FWA based on her opposition to age discrimination by Geico PIP Manager Kathy Watkins against Marie Walters.  Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation under the ADEA or the FWA, because of the following reasons: (1) Plaintiff cannot demonstrate that she had an objectively reasonable belief that Kathy Watkins was discriminating against Marie Walters because of her age; and (2)  Plaintiff cannot establish a causal link between her alleged protected activity and the subsequent termination of her employment.

### 1.   Plaintiff has demonstrated that she had an objectively reasonable belief that Kathy Watkins was discriminating against Marie Walters because of her age.

As previously discussed above, in order to demonstrate that Plaintiff's opposition to Watkins' conduct towards Marie Walters constituted statutorily protected expression, Plaintiff must prove: (1) a subjective, good-faith belief that Geico engaged in an unlawful employment practice and (2) that her belief was objectively reasonable. <u>Little</u>, 103 F.3d 956, 960. However, it is not necessary for Plaintiff to prove the merits of Marie Walters' underlying case of age discrimination. <u>See</u> <u>Tatt</u>, 138 Fed. Appx. 145, 147.

In Plaintiff's deposition she has testified that on numerous occasions starting in May of 2003, Kathy Watkins, asked Plaintiff to keep an eye on Marie Walters' and issue a warning to Ms. Walters for poor performance issues. However, Plaintiff wanted more time to observe Ms. Walters before issuing a warning.

In December of 2003, Plaintiff complained to Defendant's Human Resources office that Kathy Watkins was continually pressuring her to discipline and scrutinize Ms. Walters when her performance did not warrant such action. Plaintiff did not feel that Ms. Walters' performance warranted a warning. Plaintiff thought Ms. Walters was working hard, but was unable to meet her goals because she had a larger work load than other employees in her department. Ms. Watkins on the other hand thought Ms. Walters was just "too slow." Plaintiff told Human Resource Manager Diana Diaz that Plaintiff believed Ms. Walters was being discriminated against because of her age (at that time Ms. Walters was 58 years old). Diaz told Plaintiff that she would look into the matter. Even after the December 2003 meeting, Ms. Watkins continued to insist that Plaintiff "write-up" Ms. Walters because she

was "too slow."  Plaintiff warned Ms. Watkins that her treatment of Ms. Walters could be regarded as age discrimination.

In January of 2004, Ms. Walters made a complaint through Defendant's internal complaint procedure, alleging that Ms. Watkins was harassing and discriminating against her because of her age.  During the investigation of the complaint, Defendant's Vice President in charge of the Lakeland Facility, George Rogers, interviewed Plaintiff.  Plaintiff informed Mr. Rogers that Ms. Walters' performance did not warrant disciplinary action and was comparable to that of other employees who had not been written up.  Defendant resolved the complaint by determining that Ms. Walters should not be disciplined, and would be permitted to transfer to a unit outside Ms. Watkins' supervision.  Ms. Walters' pay was not reduced, however her position was considered a "lower level position".

Based on the chronology of events presented to this Court surrounding Plaintiff's participation, supervision and support of Marie Walters' age discrimination claims against Geico beginning in May of 2003 and continuing through December of 2003, the Court concludes that Plaintiff has established a subjective, good-faith belief that Geico engaged in an unlawful employment practice and that her belief was objectively reasonable.

**2.      Plaintiff has failed to establish a causal link between her alleged protected activity and the subsequent termination of her employment.**

As discussed above, to prove a causal link, a plaintiff must demonstrate that the protected activity and the adverse action were not "wholly unrelated."  Farley, 197 F. 3d

1322, 1337.  A plaintiff may establish the causal link by showing a close temporal proximity between the decisionmaker's knowledge of the protected activity and the adverse employment action.  Higdon, 393 F.3d 1211, 1220.  The temporal proximity must be "very close."  Id.  The Eleventh Circuit has held that a period of one month between the protected activity and the adverse employment action qualifies as "close temporal proximity," Id.  A three-month lapse does not.  Id.

From a review of the evidence presented to this Court, Plaintiff has established that she objected to Ms. Watkins' treatment of Marie Walters in December of 2003. However, Plaintiff has not provided further evidence of express opposition by her in regard to Ms. Watkins' conduct towards Marie Walters.

Plaintiff attempts to argue that the July 19th letter sent to Geico on behalf of Marie Walters constitutes "protected activity."[8]  Plaintiff's argument is without merit.  Plaintiff did not write the July 19th letter, nor does the letter mention recent opposition by Plaintiff as to Kathy Watkins' conduct towards Marie Walters.  In general, the letter refers to opposition by Plaintiff in the past.  However, Geico became aware of Plaintiff's opposition to Kathy Watkins' conduct towards Marie Walters in December of 2003.

Nothing in the record supports the proposition that Plaintiff suffered a causally related adverse employment action as a result of her opposition in December of 2003. In fact, there

---

[8] If Plaintiff were to argue that her alleged solicitation of Marie Walters and other employees to file suit against Geico was protected activity, such argument would fail.  Conduct of soliciting or inviting others to file or join in a discrimination claim is not considered protected activity under Title VII.  See B.T. Jones v. Flagship International, 793 F.2d 714, 728 (5th Cir. 1986).

was an eight (8) month gap between Plaintiff's protected activities in December of 2003 and Plaintiff's termination in August of 2004. For these reasons, the Court concludes that Plaintiff's opposition to Kathy Watkins' conduct towards Marie Walters in December of 2003 is too remote to be causally related to Plaintiff's termination in August of 2004. Further, Plaintiff's protected activity in December of 2003 and her termination in August of 2004 appear to be wholly unrelated. Since Plaintiff has failed to establish that there is some causal connection between the two events, Plaintiff has failed to establish a *prima facie* case of retaliation under the ADEA and the FWA. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's claims that Defendant retaliated against her in violation of the ADEA and the FWA based on her opposition to age discrimination against Marie Walters.

## IV.   Conclusion.

Plaintiff has failed to establish a *prima facie* case of retaliatory discharge against Defendant in violation of Title VII or the FCRA. Accordingly, Defendant's Motion for Summary Judgment is granted as to Counts I and III of the Amended Complaint relating to Plaintiff's claims that Defendant retaliated against her in violation of Title VII and the FCRA based on her opposition to sexual harassment and racial discrimination against her husband. Additionally, Plaintiff has failed to establish a *prima facie* case of retaliatory discharge against Defendant in violation of the ADEA and the FWA. Accordingly, Defendant's Motion for Summary Judgment is granted as to Counts II and IV of the Amended Complaint

relating to Plaintiff's claims that Defendant retaliated against her in violation of the ADEA and the FWA.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendant's Motion for Summary Judgment (Dkt. #28) is GRANTED.

2.    The Clerk is directed to enter JUDGMENT in favor of Defendant, Geico General Insurance Company, and against Plaintiff, Marija Stone.

3.    The Clerk is also directed to terminate any pending motions and to CLOSE this case.

**DONE** and **ORDERED** in Tampa, Florida on September 12, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-636.msj 28.wpd