**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MARIJA STONE,**

    **Plaintiff,**

**v.**                                         **Case No.  8:05-cv-636-T-30TBM**

**GEICO GENERAL INSURANCE**
**COMPANY,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon a Remand (Dkt. #55) from the U.S. Court of Appeals, Eleventh Circuit, entered on July 23, 2008 (the "Remand Order"), concerning this Court's Amended Order (Dkt. #41) granting Defendant's Motion for Summary Judgment entered on September 26, 2006 (the "Summary Judgment Order").

In the Summary Judgment Order, this Court granted summary judgment in Defendant's favor as to Plaintiff's retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) (Count I), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (Count II), the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10(7) (Count III), and the Florida Whistleblowers' Act ("FWA"), Fla. Stat. § 448.102(3) (Count IV). In short, this Court determined that (1) Plaintiff failed to establish that a

reasonable person would perceive her work environment as hostile and abusive; and (2) Plaintiff failed to establish a causal link between her alleged protected activity and the subsequent termination of her employment. Accordingly, this Court concluded that Plaintiff failed to establish a prima facie case of retaliation under Title VII, the ADEA, the FCRA and FWA. On October 11, 2006, Plaintiff filed a Notice of Appeal.

On appeal, the Eleventh Circuit examined Plaintiff's ADEA retaliation claim using the Title VII burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, "[t]he plaintiff first has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. The burden then shifts to the defendant to 'articulate some legitimate nondiscriminatory reason' for the alleged discrimination. If the defendant produces such a reason, the plaintiff must then prove that the legitimate reason offered was a mere pretext for an illegal motive." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 597 (11th Cir. 1994).

To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in ADEA protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was casually related to the protected expression. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1117 (11th Cir. 2001). The Eleventh Circuit concluded that Plaintiff met her burden of establishing a prima facie case of retaliation by a preponderance

of the evidence. Pursuant to such finding, the Eleventh Circuit vacated this Court's Amended Order and remanded the matter for further proceedings.[1]

## Discussion.

Since the Eleventh Circuit has determined that Plaintiff Marija Stone ("Plaintiff" or "Stone") established a prima facie case of retaliation under the ADEA, this Court must now determine whether Defendant Geico General Insurance Company ("Defendant" or "Geico") has met its burden of articulating "some legitimate nondiscriminatory reason" for Plaintiff's termination.

### I.  Legitimate nondiscriminatory reason.

In Geico's Motion for Summary Judgment, Geico states that Stone was terminated on August 16, 2004, for the following reasons: (1) her improper electronic access of Geico's corporate files; and (2) her falsification of two Florida Department of Insurance Licensing applications regarding her criminal history. Plaintiff does not dispute that on several occasions she accessed corporate files that were beyond the scope of her department and

---

[1] The Eleventh Circuit examined Plaintiff's ADEA retaliation claim (Count II) using the Title VII burden shifting framework of *McDonnell Douglas*. The Eleventh Circuit acknowledged that Stone's FWA claim (Count IV) would turn on the resolution of her ADEA claim. Although unexamined by the appellate court, Stone's FCRA retaliation claim (Count III) - to the extent it relates to age discrimination - likewise relies on the resolution of her ADEA claim. This Court's determination that Plaintiff failed to establish a prima facie case of retaliation in relation to sexual harassment or racial discrimination under Title VII (Count I), however, was not examined or discussed by the Eleventh Circuit nor does the Remand Order concern such issues. Accordingly, this Court's ruling in the Amended Order (Dkt. #41) entered on September 26, 2006, controls as it relates to Stone's retaliation claims under Title VII and the FCRA for activity in opposition to sexual harassment or racial discrimination. Thus, Defendant's Motion for Summary Judgment (Dkt. #28) is granted as to Count I. Defendant's Motion for Summary Judgment is granted in part as to Count III to the extent Count III relates to Stone's retaliation claims based on her alleged protected activity in opposition of sexual harassment or racial discrimination.

position. Further, Plaintiff does not dispute that she omitted certain information regarding a shoplifting charge when completing her insurance licensing applications. Accordingly, the Court concludes that Geico has met its burden of articulating some legitimate nondiscriminatory reason for Plaintiff's termination.

## II.     Pretext.

Plaintiff argues that both of Geico's reasons for termination are pretextual based on the timing and contrived nature of the reasons. First, Plaintiff argues that in May of 2004 Geico became aware of Plaintiff's access to Geico's corporate files. Geico did not investigate the issue or pursue the matter with Plaintiff at that time. Second, Plaintiff argues that when Geico discharged Stone via telephone, Stone was informed that the reason for her dismissal was based on her improper access of Geico's confidential computer files. Geico did not refer to Stone's omission of her arrest from her 1998 insurance application.

In May of 2004, Plaintiff accessed associate personnel files and information ("PA Information") of adjusters in the continuing unit. Plaintiff was not a manager or supervisor of the continuing unit. Plaintiff's husband worked as an examiner in the continuing unit. PA Information is considered "protected information" by Geico. PA Information is used by Geico management to provide associates with coaching feedback during monthly performance review sessions and is used as a means to rank associates within particular sections for purposes of salary increases. Pursuant to Geico policy, PA Information was restricted to managers and supervisors of individual sections or departments.

Upon accessing such PA Information, Plaintiff realized that such information should not be available to all Geico employees on a "public file." Plaintiff notified David Seavey, a Continuing Unit Claims Manager, that the PA Information for Continuing Unit examiners was accessible to all Geico employees on a public file. On the same day, David Seavey notified his immediate supervisor, Mark Sugden, that the PA Information was accessible to all employees on a public file. Mark Sugden then called computer tech personnel to fix the glitch in the system.

A few weeks later, Plaintiff again accessed the PA Information on the public file. She once again notified David Seavey that the PA Information was still accessible on the public file. In order to confirm the accessibility of the PA Information, David Seavey requested several of his examiners to try to access the same information on their computers. They also were able to access the information that was intended to be protected information and available only to specific managers and supervisors. Once again David Seavey notified Mark Sugden that the information remained unprotected. Within a few weeks, the technology department set up a new profile for the PA Information and the glitch in the system was fixed.

In May of 2004, neither Mr. Seavey nor Mr. Sugden told Plaintiff not to try to access the information again or to report the problem to her immediate supervisor. Further, Plaintiff did not receive an informal or formal reprimand or comment by any Geico supervisor or manager relating to her access of the PA Information in May of 2004.

Also in May of 2004, Plaintiff accessed the loss file of an associate named Leslie Malone.  Associate loss files are personal insurance claims filed by Geico associates that maintain their personal auto insurance through Geico.  Geico policy dictates that associate loss files are accessible by only the adjuster specifically assigned to handle associate loss files and their direct supervisors and managers.  It is a violation of Geico policy to show an associate loss file to any Geico employee who is not directly involved with the file's handling.

On May 28, 2004, Tess Guidry, a TCR-1 Supervisor, voluntarily approached Human Resource Manager Diana Napoles and reported that Marija Stone had accessed Leslie Malone's associate loss file as well as PA Information of employees that were not in Stone's unit.  Ms. Guidry told Ms. Napoles that Stone was "trying to find something against Geico."[2] Ms. Guidry also told Ms. Napoles that "Marija has a pending lawsuit against the company" and that it was related to her husband and Continuing Unit Manager, Michael White.[3]  Ms. Napoles asked Ms. Guidry to sign a written statement supporting such allegations, but Ms. Guidry declined because she claimed to be uncomfortable with the entire situation and did not want to get too involved.

Ms. Napoles did not investigate the allegations made by Ms. Guidry or ask Stone for an explanation during the months of June or July of 2004.  Ms. Napoles admits that she did

---

[2] *See* Dkt. #28-39, Deposition of Tess Gudiry, Page 25, Lines 21-24.

[3] *See* Dkt. #28-39, Deposition of Tess Guidry, Page 29, Lines 6-8.

not give Plaintiff a warning or take any disciplinary action, because "[i]t wasn't needed at that time."[4]

During the last week of July or the first week of August, Geico's Lakeland office received a copy of a letter dated July 19, 2004, sent by Marie Walters' lawyer claiming that Geico had discriminated against Ms. Walters because of her age (the "July 19th letter").[5]

On August 4, 2004, as part of an internal investigation relating to the age discrimination claims made in Marie Walters' age discrimination demand letter, Ms. Napoles and Byron Howard asked Ms. Guidry to meet them in Ms. Napoles office. Ms. Napoles inquired into Ms. Guidry's allegations from their May 28, 2004 meeting and asked what the atmosphere in the department was like currently. At the August 4th meeting, Ms. Guidry told Ms. Napoles and Mr. Howard that she was aware that Marie Walters had filed an age discrimination complaint against Geico and that Ms. Walters was using the same attorney as Plaintiff's husband, Neville Stone. Ms. Guidry also told them that Marija Stone was soliciting other Geico employees to file complaints against Geico.

On August 4, 2004, Ms. Napoles asked Ms. Guidry again whether she would be willing to give a written statement regarding her allegations against Stone made in May of

---

[4] *See* Dkt. #28-16, Deposition of Diana Napoles, Page 46, Lines 8-11.

[5] The July 19th letter states, in pertinent part: "It is clear that Ms. Watkins was on a path to develop a pretextual reason for terminating Ms. Walters. This is evidenced by the fact that Ms. Watkins, despite Ms. Walters' outstanding performance, continually imposed upon Ms. Walters' supervisor [Stone] to issue performance warnings to Ms. Walters for no reason other than illegally laying the groundwork for severing Ms. Walters from employment at Geico. Ms. Walters' supervisor [Stone] objected, knowing discipline was baseless, discriminatory, and unlawful."

2004. Ms. Guidry claimed to be afraid of Stone. Ms. Napoles continued to press Ms. Guidry for a written statement, and Ms. Guidry said she would think about it. Later that day, Ms. Guidry returned and provided a written statement to Ms. Napoles regarding Stone's May 2004 actions as well as Stone's more recent activities and comments.

On the same day, Ms. Napoles called Stone to her office and told Stone that she was being placed on administrative leave, must hand over her employee badge, and leave the building immediately. Subsequent to placing Stone on administrative leave, Ms. Napoles contacted Geico's special investigations unit to run a background check on Stone to see if she had a criminal background. The background check revealed that Stone had once been charged with a misdemeanor for shoplifting in 1997. The charge was dismissed in July of 1998. Stone had no other criminal history. Ms. Napoles then pulled Stone's 1998 insurance license application to see if Stone had disclosed that she had been charged with a misdemeanor. Stone did not disclose such information in her insurance license application.

On August 12, 2004, Diana Napoles and Rhett Rayburn met with Stone and confronted her with Ms. Guidry's allegations as well as Stone's failure to disclose her prior criminal history. After the August 12th meeting, Ms. Napoles and Mr. Rayburn recommended that Stone be terminated. Geico managers, Burklin, Rogers, Lanier and Burgess, agreed with Ms. Napoles recommendation.

On August 16, 2004, Ms. Napoles and Mr. Rayburn called Stone and informed her over the telephone that based on her violation of confidentiality provisions of Geico's code

of conduct she was terminated. Ms. Napoles admits that Stone's prior failure to report her criminal history on her insurance license application was not given to her as a reason for her termination.

Based on the facts presented to this Court, a genuine issue of material fact exists upon which a reasonable jury could return a verdict in Plaintiff's favor as to whether Geico's proffered reasons for discharging Stone were pretextual. A reasonable jury may question Geico's delay in investigating Stone's unauthorized access of corporate records. Geico discovered the improper access in May, but did not pursue the issue until August 4, 2004 (after receiving a letter from a lawyer threatening litigation on behalf of Marie Walters). Likewise, a reasonable jury may question Geico's claim that Stone was discharged based on her falsification of two Florida Department of Insurance Licensing applications regarding her criminal history, when such behavior was not provided to Plaintiff as a reason for her discharge at the time of her termination.[6]

Accordingly, Defendant's motion for summary judgment is denied as to Plaintiff's ADEA retaliation claims.

It is therefore ORDERED AND ADJUDGED that:

1.  This Court's Amended Order (Dkt. #41) is **VACATED** in part as stated herein.

---

[6] A reasonable jury may, of course, find that the continued accessing of information known by Plaintiff to be private was a legitimate reason for termination and that Defendant delayed until Ms. Guidry put her statement in writing. The same is true for the falsification issue.

2. Defendant's Motion for Summary Judgment (Dkt. #28) is **GRANTED IN PART AND DENIED IN PART** as stated herein. Defendant's Motion for Summary Judgment is granted as to Count I and granted in part as to Count III to the extent Count III relates to Stone's retaliation claims based on her alleged protected activity in opposition of sexual harassment or racial discrimination. Defendant's Motion for Summary Judgment is denied as to the remainder.

**DONE** and **ORDERED** in Tampa, Florida on September 29, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-636.remand order 55.wpd